UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-826 CAS (PJWx) | Date | July 14, 2011 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC., et al., v. THE CITY OF LONG BEACH, et al. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| CATHERINE JEANG | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (In Chambers:) Order on Plaintiffs' CEQA claims

## I.   INTRODUCTION

On December 29, 2009, plaintiffs Natural Resources Defense Council Inc. ("NRDC") and Sierra Club filed their verified petition for writ of mandate under the California Environmental Quality Act ("CEQA") and complaint against defendants City of Long Beach; Mayor Bob Fisher; nine members of the Long Beach City Council; the Harbor Department of the City of Long Beach; the Board of Harbor Commissioners of the City of Long Beach; Commission President Nick Sramek; Commission Vice President Mario Cordero; Commission Secretary Dr. Mike Walter; Commission Assistant Secretary Susan Anderson Wise; Commissioner Thomas Fields; and Does 1-20 (together "POLB") in the Los Angeles Superior Court. Plaintiff's filed their first amended complaint ("FAC") on January 22, 2010, alleging three claims under CEQA, §§ 21151(c), 21080(c)(2) & (d), 14 Cal. Code of Regulations 15061(e); a claim under the California Constitution, Art. XI, § 7; and a claim under the Brown Act, § 54950, et seq. On February 4, 2010, POLB removed this case to federal court based on federal subject matter jurisdiction.[1]

---

[1] Specifically, POLB asserts that the Court has original jurisdiction pursuant to 28 U.S.C. § 1331, because the instant action collaterally attacks the settlement POLB and ATA entered into in Am. Trucking Ass'ns, Inc. v. City of Los Angeles, Case No. CV 08-4920 CAS (Rzx). See Notice of Removal of Action at 2. The Order of Voluntary Dismissal with Prejudice of Long Beach Defendants specifies that "the United States District Court for the Central District of California shall retain exclusive jurisdiction and venue over any action to enforce the terms of the Stipulation of Settlement . . . ."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-826 CAS (PJWx) | Date | July 14, 2011 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC., et al., v. THE CITY OF LONG BEACH, et al. | | |

Pursuant to stipulation as to the briefing schedule, plaintiffs submitted their opening brief on their CEQA claims on January 11, 2011. On February 14, 2011, the POLB Defendants filed their opposition brief, and real party in interest ATA filed its opposition brief. On February 28, 2011, plaintiffs filed their reply brief. On March 18, 2011, a hearing was held on the matter, at which time the parties were asked to submit supplemental briefs. On March 28, 2011, plaintiffs submitted their supplemental brief. On April 1, 2011, real party interest ATA filed its supplemental brief. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.  BACKGROUND

The instant lawsuit arises out of the settlement of a prior lawsuit, Am. Trucking Ass'ns, Inc. v. City of Los Angeles, Case No. CV 08-4920 CAS (RZx), in which ATA sued the Cities and Ports of Long Beach and Los Angeles regarding provisions in their "Clean Truck Program." Plaintiffs allege that POLB's entering into a settlement agreement with ATA substantially modified POLB's Clean Truck Program aimed at improving environmental, safety, and security conditions at the Port. Compl. at 9-11. Under the settlement agreement, POLB agreed to modify its Clean Truck Program so that licensed motor carriers are no longer required to enter into a "Concession Agreement" in order to perform trucking services at the Port of Long Beach. Rather, they are required to enter a "Registration Agreement." Id. While the Registration Agreement requires licensed motor carriers to comply with a number of provisions to assist the Port in monitoring compliance with various environmental, safety, and security regulations, plaintiffs allege that the settlement and Registration Agreements substantially weakened the environmental benefits of the Port's Clean Truck Program. Id. Plaintiffs further allege that the settlement agreement substantially impairs the ability of present and future city officials to place new or different requirements on trucking companies or individual truck drivers serving the Port of Long Beach even if such requirements are in the public interest. Id. at 11.

## III.  DISCUSSION

In plaintiffs' opening brief, they argue that the enactment of the settlement agreement between the Long Beach Harbor Commissioners and the American Trucking Association ("ATA") was a "project" that triggered CEQA review because the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-826 CAS (PJWx) | Date | July 14, 2011 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC., et al., v. THE CITY OF LONG BEACH, et al. | | |

replacement of the Concession Agreement with the Registration Agreement "'may'–at the very least–have a significant effect on the environment."[2] Opening Brief at 2. Specifically, "[t]he air in Long Beach will be more polluted as a direct result of Long Beach's agreement with ATA to replace a tough truck maintenance rule with a soft one. This fact alone easily meets the legal test for a 'project' within the meaning of CEQA." Reply Brief at 1. Plaintiffs summarize the relevant differences between the two agreements as follows. "First, the Registration Agreement removes LMC accountability for the environmental, safety, and security standards set by the Port. Under the Registration Agreement, LMCs must 'certify' and 'acknowledge that they will only dispatch trucks that meet the Port's environmental, safety and security standards. . . . However, the Port has little, if any, ability under the Registration Agreement to hold the LMCs accountable for those promises." Opening Brief at 5. "Second, under the settlement, any attempt by the Port or City to require LMCs to meet more stringent environmental, safety, or security requirements than those set out in the Registration Agreement may be a breach of the settlement agreement and authorize ATA to reinstate its lawsuit against Long Beach." Id. at 6. Third, plaintiffs argue, the Registration Agreement provides weaker incentives and controls over truck maintenance are likely to undercut any environmental benefits achieved by the Concession Agreement. For

---

[2] Plaintiffs additionally argue that the Long Beach City Attorney, in preventing NRDC from appealing the finding that the adoption of the settlement agreement and the ordinance implementing that agreement were exempt from CEQA review, violated California Public Resources Code Section 21151(c), California Code of Regulations 15061(e), and Long Beach Municipal Code Section 21.21.507(A). Opening Brief at 17-19. The POLB Defendants argue that plaintiffs' right to appeal the decision was limited by the fact that "the City Council's jurisdiction to hear such an appeal was divested here by this Court's retention of 'exclusive jurisdiction' over the [settlement agreement]." POLB Defs.' Resp. at 20. Moreover, the POLB Defendants argue, "[p]laintiffs' right to appeal argument is both irrelevant and moot, since this lawsuit itself provides the appeal Plaintiffs seek, and the decision of the Court will be binding on all parties." Id. at 21. In reply, plaintiffs contend that this Court retained jurisdiction only "only over enforcement of the settlement agreement, and therefore did not take away the City Council's authority and obligation under CEQA or the Long Beach Municipal Code to hear NRDC's appeals." Reply at 9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-826 CAS (PJWx) | Date | July 14, 2011 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC., et al., v. THE CITY OF LONG BEACH, et al. | | |

'O'

example, plaintiffs note that "[u]nlike the Concession Agreement, the Registration Agreement does not require LMCs to prepare maintenance plans or allow the Port to inspect any maintenance records." Id. at 7. Additionally, plaintiffs contend that the Registration Agreement "provides no incentive for LMCs to financially support or assist drivers with maintenance," and "does not require LMCs to meet minimum financial requirements," which in turn means that "there is no guarantee that those performing port drayage will have the capital to purchase newer, cleaner trucks as they become commercially available or can afford the expenses of proper maintenance." Id. at 7-9.

In light of the operative differences between the Concession Agreement and the Registration Agreement, plaintiffs contend that the ordinance that superceded the Concession Agreement with the Registration Agreement constituted a project that triggered a requirement that a CEQA review be performed.

Further, plaintiffs argue, none of the exemptions claimed in connection with the adoption of the ordinance are applicable.[3] Id. at 11. Plaintiffs first argue that Section 21084 is inapposite because it does not provide an exemption. Id. at 14. Next, plaintiffs argue, the exemption provided in Section 15273 for rates, tolls, fares, and charges is inapplicable because the Board failed to "provide any written findings explaining the basis for the claimed exemption, let alone findings that provided a rationale with 'specificity.'" Id. at 14-15. Moreover, plaintiffs contend that the exemption is inapplicable here, as many of the proposed amendments cannot be fairly read to concern the "establishment, modification, structuring, restructuring, or approval of rates, tolls, fares, and charges."[4] With respect to the exemption provided in Section 5301(d),

---

[3] The ordinance provides that the "amendments to Port of Long Beach Tariff No. 4 are 'exempt from CEQA under California Public Resource Code Section 21084, Title 14 of the California Code of Regulations, Section 15273 (rates, tolls, fares, and charges), Section 15301(d) (restoration or rehabilitation of mechanical equipment) and Section 15061(b)(3) (no possibility of significant adverse effect on the environment)." Opening Brief at 11, citing AR 5478.

[4] Plaintiffs also note that reliance on this exemption is inconsistent with the ATA's litigation position that "the regulation of 'rates, tolls, fares, and charges' for port drayage is preempted under Federal law." Opening Brief at 15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-826 CAS (PJWx) | Date | July 14, 2011 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC., et al., v. THE CITY OF LONG BEACH, et al. | | |

plaintiffs similarly argue that it is inapplicable here because "even a cursory reading of this exemption makes clear that it was intended to apply to the performance of minor repairs to damaged structures, facilities, or mechanical equipment. Thus, it is hard to imagine how the amendments to Tariff No. 4–even if one were to take a distorted view of 'mechanical equipment' to include heavy duty trucks–would fall into this section. [Additionally], courts have concluded that projects are outside of this exemption when the resulting environmental impact would be more than negligible, or stated differently, where the activity raises a reasonable possibility of a significant environmental effect." Id. at 16. Lastly, plaintiffs argue that the exemption provided in Section 15061(b)(3) is inapplicable, because it cannot be "seen with a certainty that there is no possibility that the activity in question may have a significant effect on the environment." Id. Moreover, plaintiffs contend that to employ this exemption, "factual support and a brief explanation of why this exemption applies" should have been, but were not, provided. Id. at 17.

In response, the POLB defendants argue that the adoption of the settlement agreement and implementing ordinance "was not a project, and . . .even if it was, it was exempt under the 'common sense' exemption."[5] POLB Defs.' Resp. At 12. "The RA did not change existing land use. It did not facilitate or restrict potential development. And it did not change existing environmental protection rules and regulations. All it did was require carriers to certify compliance with existing laws, rules and regulations, including environmental ones, provide information, and pay a fee and establish procedures for suspending carrier registration." Id. at 16. Moreover, the POLB Defendants argue,

---

[5] The POLB defendants also argue that the Court should not, as urged by plaintiffs, employ a "fair argument" standard, but rather a "substantial evidence" standard. POLB Defs.' Resp. at 10, 13. Plaintiffs argue that "[i]n making this argument, Long Beach has confused the standard of review for the findings that a local government makes in the EIR process with the standard for determining whether an EIR is required in the first place." Reply at 2. The POLB defendants contend that even under the fair argument standard, however, plaintiffs "still lose, since they have failed to meet their burden of showing substantial evidence to support even a fair argument that the [settlement agreement] might have a significant effect on the existing environment." POLB Defs.' Resp. at 17-18.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-826 CAS (PJWx) | Date | July 14, 2011 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC., et al., v. THE CITY OF LONG BEACH, et al. | | |

"[b]ased on the record, no credible argument can be made that implementation of the [settlement agreement] *increased* air emissions." Id. at 17 (emphasis in original).

According to the POLB defendants, plaintiffs' analysis is incorrect because they do not employ the correct environmental baseline. Id. at 14. Specifically, the POLB Defendants argue, plaintiffs' comparison of the Concession Agreement and the Registration Agreement is inapposite, because the physical environment was unaffected by the Concession Agreement. "The fact is the [Concession Agreement] was stillborn. It never became vital. And it had no time to leave any mark in the world that could serve as a baseline for environmental review."[6] Id. at 15. Therefore, the POLB Defendants argue, the environmental baseline suggested by plaintiffs is purely hypothetical, as evidenced by the fact that plaintiff's analysis "does not discuss actual effects of the [Concession Agreement] on the environment or the changes to those effects wrought by the [Registration Agreement]." Id.

Moreover, the POLB Defendants argue, the abandonment of the Concession Agreement and its replacement with the Registration Agreement is subject to the Section 21080(b)(5) exemption, because "the Board's abandonment of [the concession] agreement as a result of the ATA's early litigation success was merely withdrawing its initial approval and is analogous to disapproving a project under §21080(b)(5)." Id. The POLB defendants further argue that even if the approval of the settlement agreement were a "project" for CEQA purposes, it is subject to the common sense exemption pursuant to Section 15061(b)(3). Id. at 19. In this respect, the POLB Defendants argue that the instant dispute is analogous to that considered by the California Supreme Court in Muzzy Ranch Co. v. Solano County Airport Land Use Comm'n, 41 Cal. 4th 372 (2007). Id. at 20. "Similar to Muzzy Ranch, the [settlement agreement] requires LMCs to comply with existing laws, rules and regulations, provide information to POLB, pay administrative fees, and equip their trucks with an identification device . AR5411-5444.

---

[6] In reply, plaintiffs argue that the POLB Defendants overstate the ineffectiveness of the Concession Agreement. "Long Beach argues that the concession never existed. . . . The reality is that the portions of the concession that were enjoined were implemented for seven months, and the remaining portions of the concession had been in place since the concession was first implemented in October, 2008." Reply at 5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA         O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-826 CAS (PJWx) | Date | July 14, 2011 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC., et al., v. THE CITY OF LONG BEACH, et al. | | |

Since adoption of the drayage truck measures, truck emissions at the Port decreased each year. . . . Those emission reductions continued throughout the ATA Litigation and after implementation of the [Registration Agreement]. . . . Considering the existing decline in truck emissions and the nature of the [Registration Agreement], its approval could not possibly adversely affect air quality or public health in any significant manner."[7] Id. at 20.

Additionally, the POLB defendants request that the Court dismiss plaintiffs' Brown Act Claim. Id. at 22. First, defendants argue, if the Court finds that plaintiff's CEQA claims fail, the Brown Act claim should be dismissed, as plaintiffs have conceded that the success of the Brown Act claim was entirely dependent on their CEQA claims. Defendants further argue that plaintiffs' Brown Act claim should be dismissed even if the Court finds a CEQA violation, because approval of the settlement agreement was subject to the litigation exemption and not within the Trancas exemption. Id. at 23. Moreover, defendants argue, plaintiffs Brown Act and CEQA claims are incompatible, because they can only succeed on their CEQA claims if no" meeting" occurred, and can only succeed on their Brown Act claim if such a meeting *did* occur, and was not open or exempt.[8] Id. at 22.

---

[7] In reply, plaintiffs argue that these assertions are insufficient to meet defendants' burden to show that with certainty that "there is no possibility that the activity in question may have a significant effect on the environment." "There is no technical or expert opinion in the record showing that these effects will not occur, much less showing this with certainty. Reliance on data showing truck emissions . . . does not suffice for two reasons: first, there is no way to tell how much of the decrease is due to the economic downturn, which appears to be reversing itself as this brief is written, and second, built into Long Beach's reliance on the truck emission data is the assumption that, if new trucks are brought into the system, those trucks will stay well-maintained forever." Reply at 7-8.

[8] In defendants' response to plaintiffs' supplemental brief, defendants add that plaintiffs' counsel "admitted [at the March 18 hearing] that if Plaintiffs lose the CEQA claim, the Brown Act claim fails on the merits. He also admitted that if Plaintiffs win the CEQA claim, the Brown Act claim is moot." Supp. Resp. at 10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-826 CAS (PJWx) | Date | July 14, 2011 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC., et al., v. THE CITY OF LONG BEACH, et al. | | |

In the parties' supplemental briefing, they address the determination of the proper baseline under CEQA, and the question of whether the approval of the settlement agreement caused a sufficient change from the baseline so as to require environmental review thereunder. Plaintiffs argue that the "'pre-project' conditions consist of an environment that benefitted from Long Beach's Concession Agreement, which placed a host of requirements on licensed motor carriers ('LMCs') to reduce air pollution." Supp. Brief at 1. Further, plaintiffs argue, the Registration Agreement's abandonment of several key provisions in the Concession Agreement "undoubtedly weakens the Clean Truck Program and will negatively impact the environment. Under these facts, the fair argument standard has been met and an EIR is required." Id. at 8. Therefore, plaintiffs argue, "the Court should order Long Beach to analyze in an EIR, and take public comment on, the degradation of air quality," or, alternatively, "if there is any doubt as to whether significant environmental effects might result from the settlement or the resulting registration [agreement], the Court should order Long Beach to conduct an initial study." Id. at 10.

In response, defendants argue that plaintiffs' approach should be rejected because the "speculative effects of the Concession Agreement" were not part of the "'existing physical conditions' at the time the Settlement Agreement . . . was approved." Supp. Resp. at 2. Defendants argue that the argument that the Concession Agreement "had demonstrable positive impacts before it was replaced by the [Registration Agreement] . . . is utterly implausible." Id. at 3. Moreover, defendants argue, "[e]ven with the most sophisticated impact analysis tools available, isolation of emissions reduction actually attributable to some incremental benefit of the [Concession Agreement] over the [Registration Agreement], which is not caused by some other environmental protection, would itself be no more than conjecture and speculation. . . . Agencies are not required to do impact analyses that are 'too speculative for evaluation.'" Id. at 8, quoting Laurel Heights Improvement Ass'n v. Regents of University of California, 6 Cal. 4th 1112, 1137 (1993).

The Court concludes that the adoption of the settlement agreement and the Registration Agreement was a "project" under CEQA. The implementation of the Registration Agreement was an activity taken by a public agency that "may cause a direct physical change or a reasonably foreseeable indirect physical change in the environment," as outlined by plaintiffs in their briefing. Muzzy Ranch, 41 Cal. 4th at 382. Further,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-826 CAS (PJWx) | Date | July 14, 2011 |
|---|---|---|---|
| Title | NATURAL RESOURCES DEFENSE COUNCIL, INC., et al., v. THE CITY OF LONG BEACH, et al. | | |

while the Court agrees with defendants that an agency is not always required to conduct an initial study before concluding that an action is not a "project," or that an action is categorically exempt, the Court finds that in this case, such a review is necessary. The Court concludes that the only categorical exemption cited by defendants that might reasonably be applied to the instant action is the "common sense" exemption. However, the Court finds that this exemption is inapplicable because plaintiffs have set forth a reasonable argument as to the possibility that the project will cause a significant environmental impact, and defendants fail to set forth facts that "justify its invocation." Id. at 387. See Davidon Homes v. City of San Jose, 54 Cal. App. 4th 106, 118 (1997) ("We do not agree with appellant that any possibility of an environmental impact, however remote or outlandish, will be sufficient in every case to remove a project from exempt status under Guidelines section 15061, subdivision (b)(3). That would render the common sense exemption meaningless. We believe, however, that if a reasonable argument is made to suggest a possibility that a project will cause a significant environmental impact, the agency must refute that claim *to a certainty* before finding that the exemption applies.") (emphasis in original). Defendants have not demonstrated substantial evidence that the action "fell within the exempt category of projects." Magan v. County of Kings, 105 Cal. App. 4th 468, 475 (2002). The Court is satisfied that there is at least a possibility that the project may have a significant environmental effect. Therefore, defendants' failure to conduct an initial study was a violation of CEQA. In light of the Court's findings, defendants are ordered to conduct an initial study as defined in 14 Cal. Code Reg. § 15365 to determine whether the appropriate next step is the issuance of a negative declaration or the completion of an EIR. The Court retains jurisdiction to ensure that such study is completed in accordance with the law. The parties are further ordered to meet and confer and submit to the Court, on or before July 28, 2011, a joint report setting forth a reasonable time frame in which such a study should be completed. The joint report should also set forth the parties' position as to the appropriate manner in which to proceed with the action pending the submission of the initial study.

IT IS SO ORDERED.

| | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |